**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| CROP RISK SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-01199-TWP-TAB |
| | ) | |
| JULIA S. LIKENS, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR  RELIEF FROM CLERK'S**
**DEFAULT AND DENYING MOTION FOR DEFAULT JUDGMENT**

This matter is before the Court on Plaintiff Crop Risk Services, Inc.'s ("Crop Risk") Motion for Default Judgment (Filing No. 16) and Defendant Julia S. Likens' ("Likens") Motion for Relief from Clerk's Entry of Default and Objection to Motion for Default Judgment (Filing No. 17).  For the following reasons, Likens' Motion for Relief is **granted,** and Crop Risk's Motion for Default Judgment is **denied as moot**.

**I.       BACKGROUND**

Crop Risk sells and administers crop insurance, including insurance approved or authorized by Federal Crop Insurance Corporation ("FCIC"), which is managed by the Risk Management Agency ("RMA") of the United States Department of Agriculture.  Crop Risk initiated this action on July 7, 2023 alleging that Likens violated FCIC policies and procedures while appointed as its agent, resulting in losses paid for by Crop Risk and for which it is entitled to indemnification by Likens (*see* Filing No. 1).  The Complaint alleges that the rights and obligations of Crop Risk and Likens were documented in a Crop Insurance Agency Agreement dated January 6, 2016, and a subsequent Crop Insurance Agency Agreement dated January 8, 2019 (collectively, the "Agency Contracts") for the duration of Likens' role as an agent.  *Id.*

The Complaint alleges that in 2019, Crop Risk discovered that documents related to insurance policies sold by Likens were not in its records system. *Id.* at 3, ¶ 11.  Crop Risk reported this to the RMA's Midwest Regional Compliance Office (the "MRCO"), and they initiated an investigation.  *Id.*  According to Crop Risk, MRCO concluded that Likens "had violated FCIC policies and procedures by: (a) employing impermissible signature practices and failing to retain signed acreage and production reports for 148 policies sold in crop years 2016 through 2019; and (b) impermissibly backdating an acreage reporting form on a crop year 2019 policy." *Id.* at 3–4, ¶ 12.  Crop Risk alleges that each of the violations was committed solely by Likens and a breach of the applicable Agency Contract under which the affected policy was sold.  *Id* at 4, ¶¶ 13, 14.

MRCO initially ordered Crop Risk to return 100% of the administrative and operating subsidy previously paid to Crop Risk for selling and administering each affected policy, which totaled $580,943 in the aggregate.  *Id.* ¶ 15.  MCRO issued final findings on February 25, 2021, which Crop Risk appealed.  *Id.* ¶¶ 15, 16.  RMA's Administrator of Compliance reduced the assessment by 50%, directing Crop Risk to re-pay a sum of $290,471.50, which Crop Risk tendered to FCIC.  *Id.* ¶¶ 16, 17.  Asserting the loss of subsidy payment was solely caused by Likens' violations of FCIC policies and procedures, Crop Risk seeks indemnification from Likens for the losses, recovery of attorney fees and costs in bringing this action, and indemnification at common law for all losses from Likens' negligent or otherwise wrongful acts or omissions.  *Id.* ¶¶ 18–21.

Summons and Complaint were served on Likens on September 28, 2023, thus her Answer was due on October 19, 2023. (Filing No. 16-1).  Crop Risk requested Entry of Default from the Clerk on October 25, 2023, (Filing No. 11), alleging that Likens "has failed to appear, plead, or otherwise defend as provided in the Federal Rules of Civil Procedure.  Therefore, the Clerk is requested to enter a default against said Defendant in accordance with Fed. R. Civ. P. 55(a)." *Id*.

It filed an Amended Motion on November 12, 2023 (Filing No. 12), to which it attached a notarized version of an affidavit it had previously submitted attesting that Crop Risk's complaint had been served on Likens on September 28, 2023 (*compare* Filing No. 12-1, *with* Filing No. 11-1).  The Clerk's Entry of Default was entered on December 1, 2023 (Filing No. 13).  Minutes later on the same afternoon, counsel for Likens filed an appearance and an Answer to the complaint (*see* Filing No. 14, Filing No. 15).

Crop Risk filed the pending Motion for Default Judgment on December 8, 2023 (Filing No. 16) and, five days later, Likens filed a Motion for Relief in response, asking the Court to grant relief from the Clerk's Entry of Default, deny Crop Risk 's Motion for Default Judgment, and deem her Answer as filed of record (Filing No. 17).  Crop Risk opposed Likens' Motion for Relief (Filing No. 21) and Likens filed a reply in support (Filing No. 22).

## II.   LEGAL STANDARD

"The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)."  Fed. R. Civ. P. 55(c).  Because the Court did not yet enter a final default judgment, the Rule 55(c) "good cause" standard applies.  This is a more "lenient standard" than the one for default judgments under Rule 60(b).  *Escamilla v. United States*, 62 F.4th 367, 372 (7th Cir. 2023) (quoting *Parker v. Scheck Mech. Corp.*, 772 F.3d 502, 505 (7th Cir. 2014)).  A party seeking to set aside an entry of default must show "(1) good cause; (2) quick action to correct it; and (3) an arguably meritorious defense to the lawsuit."  *Id.* (internal quotation marks and citations omitted).  Courts have discretion to set aside a default entry for good cause.  *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 630 (7th Cir. 2009).  "Importantly, Rule 55(c) requires 'good cause' for the judicial action, not 'good cause' for the defendant's error[.]"  *Escamilla*, 62 F.4th at 372 (quoting *Sims v. EGA Prods. Inc.*, 475 F.3d 865, 868 (7th Cir. 2007)) (internal quotation marks omitted).

3

Seventh Circuit caselaw articulates a policy of favoring trial on the merits over default judgment. *Cracco*, 559 F.3d at 631 (citing *Sun v. Bd. of Trs. of the Univ. of Ill.*, 473 F.3d 799, 811 (7th Cir. 2007)).

## III.   DISCUSSION

As part of her motion seeking relief from default, Likens attached an affidavit, asserting she was not personally served with a summons and complaint and she "was not in Indiana on the date [Crop Risk] claims to have served [her]."   (Filing No. 17-1 at 1, ¶ 1.)  She attests that she received "unsolicited mailings from Plaintiff's lawyers" since a serious accident on July 16, 2023, involving her son, and she initially thought the envelope she received from Crop Risk's law firm "sometime in October 2023" "was another lawyer solicitation." *Id.* ¶¶ 2, 3. Likens opened the envelope in "probably late October or early November", and she inadvertently did not send the complaint to her attorney until December 1, 2023.  *Id.* ¶¶ 4, 5.   She explains that she "simply forgot to get the complaint to [her] attorney because of the amount of business and personal matters [she] had going on." *Id.* ¶ 5.

Likens denies allegations made in the complaint: specifically, that she had "employed irresponsible signature practices 'and failed to' retain signed acreage and production reports for 148 policies sold in crop years 2016 through 2019".  *Id.* ¶ 6.  She admits she had "one acreage and production report which was lost by one of [her] agents", which she re-filed and disclosed that fact to the Department of Agriculture.  *Id.* ¶ 7.  Likens maintains she did not know and was never told about any federal administrative investigation involving Crop Risk's "self-reporting" of her business practices, and that she first learned of any proceeding or action taken in front of RMA involving her crop insurance business by reading Crop Risk's complaint.  *Id.* ¶¶ 8, 9.

To set aside the entry of default, Likens must meet three requirements.  Crop Risk concedes that Likens took quick action to correct the entry of default (*see* Filing No. 21 at n.1).  Accordingly, this Order addresses only the remaining two requirements: good cause and a meritorious defense.

## A.     <u>Good Cause</u>

Rule 55(c) requires 'good cause' for the judicial action, not 'good cause' for the defendant's error.  *Sims*, 475 F.3d at 868.  "Damages disproportionate to the wrong afford good *cause* for judicial action, even though there is no good *excuse* for the defendant's inattention to the case." *Id.* (emphases in original); *see also JMB Mfg. v. Child Craft, LLC*, 799 F.3d 780, 792 (7th Cir. 2015) (citing 475 F.3d at 868) (explaining that 'good cause' "does not necessarily require a good excuse for the defendant's lapse").

Likens' assertion in her affidavit that she was never personally directly served with the summons and complaint conflicts with the statement of the service processer, who affirms that he personally served her with both documents on September 28, 2023 (*compare* Filing No. 17-1 at 1, ¶ 1, *with* Filing No. 21-1 at 1, ¶¶ 3, 4).  For default purposes, this conflict is resolved in Likens' favor as the nonmovant. *See Boyer v. State of Wis.*, 55 F.R.D. 90, 91 (E.D. Wis. 1972) (quoting *Alopari v. O'Leary*, 154 F.Supp. 78, 81 (E.D. Pa. 1957)) ("Any doubt should be resolved in favor of setting aside defaults so that cases may be decided on their merits.").

Regardless of whether Likens was personally served, her mistaken belief that the envelope from Crop Risk's law firm in October 2023 were another of numerous solicitations from "Plaintiff's lawyers"[1] relating to her son's July 16, 2023 accident is reasonable enough under the circumstances Likens has outlined.  Although Crop Risk remains skeptical that Likens' mistake is a 'good excuse,' it sufficiently satisfies the lenient 'good cause' standard under Rule 55(c).  Entering a $290,471.50

---

[1] The Court understands Likens to mean that she received numerous solicitations from personal injury *plaintiffs'* attorneys, and not Crop Risk's counsel ("Plaintiff*'s* lawyers") as her affidavit states (*see* Filing No. 17-1 at 1, ¶ 3).

default judgment for a delay that imposes slight injury would be disproportionate in this case, especially considering Likens' complete denial of Crop Risk's allegations. *See Strabala v. Zhang*, 318 F.R.D. 81, 91 (N.D. Ill. 2016).

## B.   <u>Meritorious Defense</u>

As for the third requirement, Likens sufficiently asserts a meritorious defense to the core allegations in Crop Risk's complaint.  In direct contradiction to the Complaint's allegations, Likens insists that she had not "employed irresponsible signature practices" or "'failed to' retain signed acreage and production reports for 148 policies sold in crop years 2016 through 2019" (<u>Filing No. 17-1 at 1</u>, ¶ 6), which meant, if true, she "would not be responsible for substantial damages to [Crop Risk]." (<u>Filing No. 17 at 2</u>, ¶ 14.)  She "denies the truthfulness" of those allegations appearing in paragraph 11 and 12 of the Complaint, *id.* ¶ 11, other than the allegation listed in paragraph 12(b) which involved a policy on eighty acres, which she admits (*see* <u>Filing No. 17-1 at 1</u>, ¶ 9).

Likens further maintains she was "never informed of the administrative proceeding and did not have any opportunity to defend" the paragraph 11 and 12 allegations (<u>Filing No. 17 at 2</u>, ¶ 11). Namely, she did not know and was never made aware "about any federal administrative investigation involving 'self-reporting' by [Crop Risk] of [her] business practices" (<u>Filing No. 17-1 at 1</u>, ¶ 8) — "[t]he first [she] knew" of any administrative proceeding or action taken in front of the RMA involving her crop insurance business "was when [she] read the Complaint in [the federal] case." *Id.* ¶ 9.  Likens essentially argues to this Court that she was never able to deny the truthfulness of Crop Risk's allegations in the administrative agency proceeding.

Instead of asserting as a factual matter that Likens was able to but did not exercise an opportunity to deny the relevant factual allegations, Crop Risk argues that the RMA has already

determined she committed the violations in question. In essence, Crop Risk maintains that collateral estoppel applies here as to that issue: "The issue in this case is not whether [Likens] violated FCIC policies and procedures (*as that issue has already been established*) but whether [Crop Risk] is entitled to common law and/or contractual indemnification from [Likens] for amounts it remitted to the FCIC." (Filing No. 21 at 6 (emphasis added).) As Crop Risk sees it, the findings of the prior administrative proceeding preclude Likens from presenting such a defense in the instant breach of contract action before this Court.

The parties do not dispute (presently) the meaning of the indemnity clauses in the pair of applicable Agency Contracts (*e.g.*, Filing No. 1-1 at 3, ¶ 5(a) ("Agent agrees to indemnify and hold the Company harmless from any and all losses, costs, penalties, damages, . . . and/or expenses . . . incurred by the Company as a result of the actual or alleged negligent or intentional acts of Agent . . . ."). Rather, the issue is whether the post-investigation conclusion by the MCRO that Likens violated FCIC policies and procedures — affirmed but reduced by the Administrator of Compliance in the RMA's July 21, 2022 Final Administrative Determination (*see* Filing No. 1 at 3–4, ¶ 12, at 4, ¶ 16) — precludes Likens from asserting in this forum that she did not violate the policies and procedures in such a manner that would trigger the Agency Contracts' indemnity provisions.

Normally, courts give preclusive effect to final determinations in an administrative proceeding "if 'the administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it where the parties have had an adequate opportunity to litigate.'" *Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008) (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)); *see also Hamdan v. Gonzales*, 425 F.3d 1051, 1059 (7th Cir. 2005) ("Res judicata applies to administrative proceedings . . . ."); Restatement (Second) Of

Judgments § 83(1) (explaining that, in general, "a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court"). The Seventh Circuit has further articulated that all of the following elements need to be met in order for collateral estoppel to apply: (1) the issue sought to be precluded must be the same as that involved in a prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must have been fully represented in the prior action. *Matrix IV, Inc. Am. Nat'l Bank & Trust Co.*, 649 F.3d 539, 547 (7th Cir. 2011) (citing *H-D Mich., Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 760 (7th Cir. 2007)).

As mentioned previously, Likens asserts she was never informed of the administrative proceeding and did not have any opportunity to defend against it. She avers that she did not know and was never made aware about the MRCO's investigation into Crop Risk's 'self-reporting' of her business practices (*see* Filing No. 17-1 at 1, ¶ 8). In her affidavit, she indicates she first discovered "any administrative proceeding or action taken in front of the [RMA] involving [her] crop insurance business" while reading Crop Risk 's complaint in the current action. *Id.* ¶ 9. Under these circumstances as presented by Likens and without additional context or argument to the contrary, Likens' denial of Crop Risk's allegations permissibly may serve as a meritorious defense.

After due consideration and given the lenient standards established for the application of Rule 55(c), the Court determines that likens has made a sufficient showing of a meritorious defense to the complaint. When Likens' Answer is read in conjunction with her Motion for Relief and attached affidavit, her explanation cannot be characterized as so conclusory to be fatal. *See Cracco*, 559 F.3d at 631. Rather, it notified Crop Risk and the Court of the nature of her defense and provided the factual basis for that defense. *See id.* (citing *Pecarsky v. Galaxiworld.com, Ltd.*,

249 F.3d 167, 173 (2d Cir. 2001); *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).  The Court, within its discretion, determines that the purpose and intent of Rule 55(c) has been fulfilled and grants the motion to set aside the default entry.  *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2692 at 88 (3d ed. 1998) ("The motion to set aside a default entry . . . may be granted for 'good case shown,' which gives a court greater freedom in granting relief than is available in the case of default judgment.").  Having granted relief from the Clerk's entry of default, Crop Risk's motion for default judgment is **denied as moot**.

### IV.   CONCLUSION

For the foregoing reasons, Likens' Motion for Relief from Clerk's Entry of Default and Objection to Motion for Default Judgment (Filing No. 17) is **GRANTED**, and her Answer to Complaint (Filing No. 15) is **DEEMED FILED** as of the date of this Order.  Crop Risk's Motion for Default Judgment, (Filing No. 16), is **DENIED as moot**.

**SO ORDERED**.

Date:   8/5/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

J. Richard Moore
BLEEKE DILLON CRANDALL
richard@bleekedilloncrandall.com

Thomas Maurice Beeman
tom@beemanlawoffice.com

Jeffrey S. Dilley
HENKE-BUFKIN
jsd@henke-bufkin.com